**ROYAL EXCHANGE ASSURANCE, Trustee, Plaintiff-Appellant,**

v.

**William P. ROGERS, Attorney General of the United States, Successor to the Alien Property Custodian, Defendant-Appellee.**

**No. 238, Docket 24621.**

United States Court of Appeals Second Circuit.

Argued April 10, 1958.

Decided June 17, 1958.

Rehearing Denied Aug. 14, 1958.

---

Cahill, Gordon, Reindel & Ohl, New York City, for appellant, Mathias F. Correa, William W. Dulles, Peyton H. Moss, and Immanuel Kohn, New York City, of counsel.

Dallas S. Townsend, Asst. Atty. Gen., Arthur H. Christy, Chief Asst. U. S. Atty., New York City, George B. Searls, Irving Jaffe, and Max Wilfant, Attys., Dept. of Justice, Washington, D. C., and Milton E. Lacina, Asst. U. S. Atty., New York City, of counsel, for appellee.

Before SWAN, HINCKS and MOORE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment for the defendant in an action brought under § 9(a) of the Trading with the Enemy Act, 50 U.S.C.A. Appendix § 9(a), to recover approximately $6,000,000 vested by the defendant as property of the Deutsches Kalisyndikat, a German corporation (hereafter referred to as the Company). The plaintiff, a British corporation, sued in its capacity as trustee for bondholders of the Company. The case was tried before Judge Weinfeld who wrote a lengthy opinion which he directed should constitute the court's findings of fact and conclusions of law. The opinion is reported in 146 F.Supp. 563.

■ The appellant asserts that there is no substantial dispute as to the facts, and we shall assume familiarity with Judge Weinfeld's opinion without repeating his findings. The legal issues presented involve construction of provisions of the trust deeds executed by the Company, which are to be construed according to the laws of England.[1] The appellant contends that the trial court erred (1) in denying it a recoverable "interest, right or title" in the vested funds under § 14 of the trust deed and, independently of § 14, under § 48; (2) in holding that the transfer to the books of Securitas withdrew the vested funds from the Receiving Bank system; (3) in finding that default did not occur on April 24, 1940; and (4) in finding there was not a constructive trust of the vested funds following Contibank's breach of duty; and (5) in not awarding the trustee the potash proceeds received into the Special Account after September 14, 1939. These same contentions were presented to the court below and are ably discussed in Judge Weinfeld's opinion.

Section 9(a) of the Trading with the Enemy Act permits a "person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property" seized by the Alien Property Custodian to bring suit and recover, if he establishes "the interest, right, or title * * * so claimed." The trust deeds define the respective rights of the bondholders and the Company. Section 14 of the principal trust deed is of critical importance in determining whether the plaintiff as trustee for the bondholders had any "interest, right, or title" in the vested property. In substance that section provides that the proceeds of sales of all exported potash are to be held by the Receiving Bank or by its nominees "upon trust firstly to set aside in every calendar month a sum sufficient at

---

1. Apparently the English law does not differ from ours in respect to the construction of documents. So the trial court held.

the time of each such setting aside to provide one-twelfth of the amount required for the annual service of the Bonds [i. e. for interest and amortization purposes] and to pay the same in accordance with the provisions of Article Sixth hereof \* \* \* and secondly to hold the remainder \* \* \* at the disposal of the Company."

■ Judge Weinfeld held that § 48, which appears in Article 10 relating to Remedies, created no additional substantive rights; and he construed § 14 to mean that as soon as the monthly loan service requirements were allocated to the trustee the remainder of the monthly proceeds of sales belonged to the Company. The plaintiff contended below, and repeats the contention on appeal, that if the Company did not during the month withdraw the funds held at its "disposal" they again became part of the trust for bondholders. All of the arguments presented to us were considered by Judge Weinfeld. We agree with the reasons he gave for rejecting them, and see no reason for repeating them here. We hold, as did he, that once the monthly payments for loan service were allocated, the remainder proceeds belonged exclusively to the Company. The judgment is affirmed on this ground.

■ Judge Weinfeld also held that even if the plaintiff were right as to the construction of § 14, the transfer of funds from Contibank, a nominee of the Receiving Bank, to Securitas for the Company's account effected a "disposal" of the remainder proceeds so as to remove them from the Receiving Bank system. With this also we agree.

The other contentions of the appellant, decided adversely to it below, we see no occasion to discuss, although they have been considered by us. Except for the desire to indicate that the appeal has received careful consideration, we would have affirmed on the opinion below without saying more.

Judgment affirmed.

## On Petition for Rehearing

**PER CURIAM.**

The appellant's petition requests a rehearing limited to the rejection of its alternative claim to the potash proceeds received into the Special Account after September 14, 1939, amounting to $966,219.97.

Two grounds of error in our opinion of June 17, 1958 affirming the judgment below, are averred. The first asserts that in relying on the trial court's opinion this court "overlooked the fact that the trial court gave no consideration to this point in its opinion." In this the petitioner is mistaken. Judge Weinfeld's opinion dealt expressly with the claim of constructive trust and equitable lien. See 146 F.Supp. 563, at page 580.

■ The second ground of alleged error is that rejection of the alternative claim is "directly contradictory to the expressed conclusions in the opinions of this court and the trial court." In this also we think the petitioner is mistaken. The trial court's opinion, at page 574, found upon all the evidence that the arrangement for Hope to function as "substitute receiving bank" and "temporary banker" had the consent of Schroder as receiving bank and banker, and was acquiesced in and ratified by the plaintiff; and "under the circumstances the remittances made to Hope must be given effect as payments under the trust deed, and so considered, there was no default with respect to the loan service requirement for May 1, 1940 which was due no later than April 24, 1940." The appellant's claim of constructive trust as to the potash proceeds credited to the Special Account on the Securitas books after September 14, 1939, rests on the theory that this constituted "a clear breach of duty by the Syndicate" which would impose a constructive trust on the diverted proceeds in favor of the appellant Trustee. But since on the dates when the credits were entered on the Securitas books, there was no default as to the loan service requirements, the items were properly treated in the same manner as

the potash proceeds accumulated prior to September 1939, that is, as "remainder proceeds." We see no inconsistency between rejection of the constructive trust claim and the other conclusions expressed in the opinions of the trial court and this court.

Petition denied.*

---

\* Due to absence from the circuit Judge MOORE has not seen this opinion but before his departure he voted to deny the petition.